**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LOYER BRADEN,<br>Defendant. | Criminal Action No. 23-944 (JXN)<br><br>**MEMORANDUM ORDER** |

**NEALS**, District Judge

On May 7, 2024, a federal grand jury returned a Superseding Indictment[1] against Defendant Loyer Braden ("Defendant"), charging him with two counts of possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Counts I and II) and possession with intent to distribute controlled substances, fentanyl, heroin, and cocaine, in violation of 21 U.S.C. § 841(b)(1)(c) (Count III). (Superseding Indictment, ECF No. 28.)

Count I alleges Defendant knowingly possessed seven nine-millimeter bullets on May 31, 2023, while committing a murder in Elizabeth, New Jersey.[2] (*Id.*) The Superseding Indictment does not charge Defendant with the murder. (*See generally id.*)

According to the Government, on May 31, 2023, as the Victim entered an auto shop, a Jaguar sports car ("Jaguar") pulled into the parking lot. (*See* Gov't Opp'n to Bail Appl. at 2.) When the Victim left, a black man wearing dark clothing, a face mask, and a hoodie ("Assailant") exited

[1] The initial Indictment returned by a grand jury on November 17, 2023, charged Defendant with possession of ammunition by a convicted felon, in violation of U.S.C. § 922(g)(1), and possession with intent to distribute controlled substances, in violation of U.S.C. § 841(a)(1) and (b)(1)(C). (ECF No. 12.)

[2] The Victim testified twice as a cooperating witness under a pseudonym: in April 2022 in *United States v. Ismail Bimbow*, No. 21-48 (S.D.N.Y.), and again in August 2022 in *United States v. Shannon*, No. 21-56 (S.D.N.Y.). (Gov't Opp'n to Def.'s Mot. In Lim. 2–3, ECF No. 49.)

the Jaguar and shot the Victim multiple times. (*Id.* at 2, 5.) After the Victim collapsed, the Assailant shot him several more times. (*Id.*) After shooting the Victim, the Assailant got into the Jaguar and fled. (*Id.* at 2.) The Victim died at the scene. (*Id.*)

The Government argues "overwhelming" evidence shows Defendant committed the murder, including eyewitness statements, "cellphone service provider records, vehicle registration information, Apple iCloud records, cellphone search warrant returns, cell site location information, and security camera footage-including footage of the murder." (Gov't's Opp'n to Def.'s Mot. in Lim. at 4, ECF No. 49.) Cell-site evidence indicates that Defendant's burner cellphone ("Burner Phone") was at the location of the shooting and followed Defendant's flight from the scene.[3] (*Id.* at 5.) Surveillance footage shows Defendant leaving his home on May 31, 2023, wearing similar clothes to the Assailant. (Gov't Opp'n to Bail Appl. at 4.) And prior to the shooting, a text message was sent from Defendant's personal cellphone to an individual under investigation for the murder ("Suspect"), stating "omw" (typically meaning "on my way"). (*Id.*) Less than thirty minutes later, surveillance footage shows the Assailant's Jaguar leaving the Suspect's driveway. (*Id*. at 4–5.)

Counts II and III relate to the items recovered by police during a search of Defendant's home in Essex County, New Jersey, on August 15, 2023, pursuant to a warrant[4] in connection with the investigation of the May 31, 2023 murder.[5] (*See id*. at 2–3, 8; Gov't's Opp'n. to Def.'s Bail

[3] The Government relies on circumstantial evidence to connect Defendant to the Burner Phone: (1) on May 12, 2023, the Burner Phone called Defendant's personal cellphone, which is subscribed to him; (2) cell-site location information shows that the Burner Phone and Defendant's personal mobile device were near each other at the time of that call; and (3) on May 31, 2023, after the shooting, the Burner Phone called Defendant's niece. (Gov't's Opp'n to Def.'s Bail Appl. at 3.)

[4] On August 12, 2023, then-Magistrate Judge Edward S. Kiel authorized a search warrant for Defendant's person and his residence in Bloomfield, New Jersey. (*Id.* at 8.)

[7] The initial Indictment returned by a grand jury on November 17, 2023, charged Defendant solely with items recovered during the August 15, 2023 search of his home, specifically (1) possession of ammunition by a convicted felon, in violation of U.S.C. § 922(g)(1), and (2) possession with intent to distribute controlled substances, in violation of U.S.C. § 841(a)(1) and (b)(1)(C). (*See* ECF No. 12.)

Appl. at 8, ECF No. 11.) Count II of the Superseding Indictment charges Defendant with possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), based on twenty-three rounds of nine-millimeter ammunition recovered from Defendant's home on August 15, 2023. (Superseding Indictment at 2.) Count III charges Defendant with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), after the search of Defendant's home revealed substances containing detectable amounts of heroin, cocaine, and another controlled substance. (*Id*. at 3.)[6] Specifically, during the August 15, 2023 search, police uncovered sneakers and clothing consistent with what the Assailant wore, Defendant's personal cellphone, and

> 10 Speer 9-millimeter rounds, 8 Winchester 9-millimeter rounds, 4 FC 9 millimeter rounds, 1 PMC 9-millimeter round, 22 plastic containers containing cocaine, one Ziplock bag containing more than 19 grams of powder cocaine, 1 plastic bag containing more than 2 grams of cocaine base in rock form, 244 glassines containing fentanyl and heroin, digital scales, and other drug trafficking paraphernalia.

(*Id*. at 6–9.) Police detained and searched Defendant pursuant to the warrant. (*Id*. at 8.) While searching Defendant, police found various cellphones, glassines containing fentanyl and heroin, and plastic containers with cocaine from a bag worn by Defendant. (*Id*.)

The bullets found during the search of Defendant's home do not match the casings found at the scene of the shooting.[7] (Def.'s Mot. In Lim. at 15, ECF No. 44-1.) According to Defendant, "the Government concedes that no firearm was recovered from [his] home--consequently there was no ballistics analysis performed to determine whether the shell casings found at the scene of

[6] Counts I and II seek forfeiture of the casings and ammunition recovered from Defendant's home; Count III seeks forfeiture of all property related to Count III (*Id*. at 4–5).

[7] The ammunition recovered from Defendant's home consisted of: ten Speer 9-millimeter rounds, eight Winchester 9-millimeter rounds, four FC 9-millimeter rounds and one PMC 9-millimeter round. (Gov't's Opp'n to Def.'s Bail App. 8–9.) The shell casings recovered from the scene of the murder are seven Blazer 9mm Luger shell casings. (Def.'s Mot. In Lim. at 16.)

the homicide were fired from a firearm seized from [Defendant's] home." (*Id.*) Police never recovered the murder weapon or Burner Phone. (Gov't's Opp'n to Def.'s Mot in Lim at 6.)

The Court initially scheduled a trial for September 22, 2025 (*see* ECF No. 43), which is currently adjourned *sine die.*[8] On August 13, 2025, the Court granted a consent request for a short adjournment of the September 2025 trial date. (ECF Nos. 56.) The Court then rescheduled jury selection for November 10, 2025. (ECF Nos. 56, 59.) After the Government submitted a second request to adjourn the trial in October 2025, the Court granted another adjournment and rescheduled jury selection for March 23, 2026. (ECF Nos. 60, 61.) Following an April 2026 letter from the Government proposing new trial dates for June 2026 (ECF No. 80), the Court adjourned the trial start date until June 15, 2026 (ECF No. 82). On May 26, 2026, the Court held a status conference. (ECF No. 89.) The Court did not set a trial date during the May 26, 2026 conference due to outstanding discovery requests. Instead, the Court scheduled another status conference for June 24, 2026. (ECF No. 93.) At the June 24, 2026 conference, discovery between the parties remained outstanding. The Court has not yet set a trial date given the status of the matter.

Federal Rule of Criminal Procedure[9] 14(a) provides that if the "joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Severance under Rule 14(a) "is a matter peculiarly within a trial court's discretion." *United States v. Rickey*, 457 F.2d 1027, 1030 (3d Cir. 1972). "The Court may act *sua sponte* under Rule 14(a)." *United States v. Carothers*, No. 20-31-2, 2024 WL 3925201, at *2 (W.D. Pa. Aug. 23, 2024).

[8] The Court has suspended ruling on the motions *in limine* filed by Defendant on December 19, 2024 (ECF No. 44) and the Government on May 22, 2026 (ECF No. 87) pending resolution of the parties' discovery issues.

[9] "Rule" or "Rules" hereinafter refer to the Federal Rules of Criminal Procedure.

The touchstone for severance is whether holding one trial for all charges creates a "substantial potential for prejudice." *United States v. Hadaway*, 466 F. App'x 154, 157 (3d Cir. 2012) (quoting *United States v. Joshua*, 976 F.2d 844, 848 (3d Cir. 1992)). The question is "whether the jury will be able to compartmentalize the evidence as it relates to separate [offenses] in view of its volume and limited admissibility." *United States v. Scarfo*, 41 F.4th 136, 182 (3d Cir. 2022) (quoting *United States v. John-Baptiste*, 747 F.3d 186, 197 (3d Cir. 2014)). "The Court must look at the specific risks of prejudice to determine if severance is proper under Rule 14, and, if so, how it will try the case." *United States v. Bergrin*, No. 09-369, 2011 WL 4407433, at *2 (D.N.J. Sept. 21, 2011).

Here, the risk of undue prejudice is great should a jury be required to compartmentalize evidence relevant only to Count I—namely, evidence connecting Defendant to the murder—in deciding Counts II and III.[10] *See United States v. Harris*, 332 F. Supp. 2d 692, 706 (D.N.J. 2004) ("[W]here one charged count involves evidence of a prior crime that is not relevant to the other count, the trial judge must proceed with caution to avoid undue prejudice. . . . The primary concern is that prior crimes evidence weighs too much with the jury and over-persuades them to prejudge") (internal citations and quotations omitted)).

Pursuant to the Court's inherent authority "to effectuate . . . the speedy and orderly administration of justice," *United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973), and for a full consideration of the issues on the merits,

**IT IS** on this 15th day of September 2026,

[10] The Superseding Indictment does not state Defendant possessed a firearm and he is not charged with felon-possession of a firearm. Count I alleges that Defendant shot and killed the Victim, therefore the Jury would presume that in order to shoot the Victim Defendant was in possession of a firearm at the time of the shooting.

**ORDERED** that the parties shall file cross-briefs within 14 days hereof stating their position on whether the Court, through an exercise of its inherent authority, should sever pursuant to Rule 14 the trial of Count I from a separate trial of Counts II and III.

**JULIEN XAVIER NEALS**
**United States District Judge**